## CROSBY LUMBER Co., Limited, *v.* SMITH.

(*Circuit Court of Appeals, Third Circuit.* April 29, 1892.)

**1. CORPORATIONS—EXCLUSION OF STOCKHOLDER—DAMAGES.**
Plaintiff and others formed a partnership, to which plaintiff contributed a large part of the capital, in the form of real and personal property. Afterwards it was agreed to form a corporation, the partners to take stock therein "to the full amount of their interest in the firm as such interest shall appear on the 1st day of October, 1888." A dispute arose as to the amount of plaintiff's interest, and in January, 1889, the corporation declared his interest in the concern forfeited, and excluded him from any share in its management. He then brought an action for damages, which, on the trial, took the form of an accounting as to his interest. *Held*, that plaintiff was entitled to recover the value of his interest at the time it was taken from him, and that in computing the same there should be included, not only the technical profits, but also the increase in value of the assets of the concern.

**2. SAME—INTEREST.**
On the amount thus found to be due, plaintiff was entitled to interest from the time he was excluded from the concern.

**3. SAME—EVIDENCE—ADMISSIBILITY.**
Plaintiff testified that he also put into the concern a steam boiler owned by him, worth $400. But on the books of the company he was credited with only $200, the other $200 being credited to N., another stockholder, who had formerly been in partnership with plaintiff. Defendant offered in evidence a paper executed long after the formation of the corporation, and purporting to be an assignment by N. of a half interest in the boiler. *Held*, that the paper was properly excluded, as it could have no effect upon any title previously vested in plaintiff.

**4. APPEAL—HARMLESS ERROR—INSTRUCTIONS.**
Where instructions to the jury are proper in themselves, the giving an erroneous reason therefor, which is not applicable to the case, and which manifestly could not have misled the jury, is no ground for reversal.

**5. SAME—REVIEW—ASSIGNMENTS OF ERROR.**
The assignments of error are to be considered with reference to the theory on which the cause was actually tried by mutual consent of the parties, and the formal claim made in the statement and declaration is not controlling.

**6. SAME—WEIGHT OF EVIDENCE—AMOUNT OF VERDICT.**
Where there is evidence to sustain a verdict, a circuit court of appeals has no power to reverse the judgment thereon, on the ground that the jury erred in the amount of their finding.

Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action for damages by John Smith against the Crosby Lumber Company, Limited, brought originally in a state court, and afterwards removed to the court below. Verdict and judgment for plaintiff in the sum of $10,527.84. Defendant brings error. Affirmed.

By a written agreement, John Smith, Louis L. Newerf, and Oscar Meyer formed a copartnership under the name of Smith, Newerf & Meyer,

in the business of manufacturing and selling lumber. After conducting the business for some time, they converted the firm into a corporation called the "Crosby Lumber Company," turning over to it all the firm assets. Each partner was to have stock in proportion to his interest in the firm as it should appear October 1, 1888. A dispute arose between Smith and the directors of the corporation as to the amount of Smith's interest, and no stock was issued to him. In January, 1889, the company declared his interest therein forfeited. Smith thereupon brought this action for damages. At the trial the case took the form of a statement of accounts between the parties.

Smith testified, among other things, that he put into the firm of Smith, Newerf & Meyer various items of real and personal property, which were turned over to the corporation; that he and Newerf had been in business together prior to the formation of that firm, and had turned their assets into it; that afterwards they had a settlement between themselves, from which it appeared that all the property so turned in belonged in fact to Smith, and that it was thereupon credited to him personally upon the new firm's books. The books themselves contained among the credits to John Smith the following item: "Account of L. L. Newerf, $3,312.15." Smith also testified that he put into the Crosby Lumber Company a steam boiler, worth $400. It appeared that the company only credited him with $200 for this item, and that it credited the other $200 to Newerf. Defendant offered in evidence a paper, executed in January, 1889, purporting to be an assignment by Newerf to the corporation of one half interest in the boiler, but it was excluded on plaintiff's objection.

The company had also charged against Smith an item of $200, which one of the directors testified was paid to one Rose for a tract of 5 acres of land, which Smith had agreed to convey to the company, but which he had failed to do. Smith testified that this piece of land was not included in the agreement; that he had purchased it individually some time before, but had failed to obtain title because of some outstanding claim; that he had used the lands for banking logs, but because of the imperfect title was compelled to abandon it, whereupon he obtained permission of one McKean to use a certain tract belonging to him for that purpose; that when the Crosby Lumber Company was formed McKean refused to allow further use of this land without compensation, whereupon it was purchased by the concern for the $200 in question. In respect to this matter the court charged the jury as follows: "There is another question as to the shortage of $200 on the five-acre claim. If you believe the plaintiff's statement as to that, you will consider that item, as it is within the statute of frauds. If you believe the defendant's statement in regard to that, * * * then you will find the value of that, and deduct it from the total amount of the valuation of the plaintiff's interest." Upon this question the plaintiff proposed the following point: "The contract to convey the property afterwards purchased from Rose was an oral one, and is within the statute of frauds; and hence the charge against the plaintiff of $200, the amount paid to Rose, cannot be sustained." To this the court answered: "Affirmed

if you find the facts in relation to this item to be as claimed by the plaintiff." The other facts fully appear from the opinion.

*Simon Fleischmann,* (*Joseph L. Greenwald* and *Sheridan Gorton,* on the brief,) for plaintiff in error.

*J. M. McClure* and *P. R. Cotter,* (*Eugene Mullin,* on the brief,) for defendant in error.

Before ACHESON, Circuit Judge, and BUTLER and GREEN, District Judges.

ACHESON, Circuit Judge. By a written agreement dated September 20, 1887, John Smith, (the plaintiff below and defendant in error,) Louis L. Newerf, and Oscar Meyer formed a copartnership under the firm name of Smith, Newerf & Meyer, in the business of manufacturing and selling lumber, and in some related enterprises. Smith was to contribute to the partnership his undivided one-half interest " in about twenty-eight acres of land," with the appurtenances, at the agreed value of $7,500, and also his like interest in certain personal property, to be inventoried within one week before October 1, 1887, at its then market value. After the partnership business had begun,—on March 29, 1888, —the three named persons and Theodore H. Meyer, Jr., entered into a written agreement for the formation of an incorporated stock company, to be called "the Crosby Lumber Company, Limited," to prosecute the same business, and the said firm thereby agreed to sell, transfer, and convey to the incorporated company all the property, real and personal, then owned by the firm, and all which should be owned by the firm on October 1, 1888; "the stock of said company" (the agreement provides) "to be held by five persons, four of whom shall be the parties to this contract for a sum of money equal to the value of the property of said firm, as shown by the inventory taken and dated on the 1st day of October, 1887, less any and all debts of said firm, together with three-sevenths of any and all profits made during the year ending October 1, 1888, as shown by an inventory to be taken on the 1st day of October, 1888." The agreement thus concludes: "It is further agreed that the said John Smith, Louis L. Newerf, and Oscar Meyer shall take stock in the proposed company to the full amount of their interest in the firm, as such interest shall appear on the 1st day of October, 1888." On or about the date last mentioned a dispute arose between Smith and the directors of the Crosby Lumber Company as to the value of his interest in the concern, and the amount of corporation stock to which he was entitled. No stock was ever issued to him, but in January, 1889, his stock, so called, or his interest in the concern, was declared by the corporation to be forfeited, and was so treated by the company. Thereafter Smith was excluded from participation in the affairs of the company. In March, 1889, he brought this action against the Crosby Lumber Company, Limited.

At the trial the defendant did not insist upon the forfeiture, and the case was tried upon its substantial merits, without reference to the pleadings. The judge below, in overruling a motion for a new trial, said:

"The case, however, was tried by both parties without regard to the affidavit or pleas, and resolved itself practically into a statement of accounts between the plaintiff and defendant, with a view to ascertaining the value of his interest in the assets of the defendant company at the time of its forfeiture by defendant company."

The record shows that this is a correct statement; and the printed brief of the counsel for the plaintiff in error submitted to us states: "The trial in fact took the form of an accounting between the parties, and the questions and figures submitted to the jury were numerous and intricate." Clearly, then, the assignments of error are to be considered with reference to the course the trial actually took by the mutual consent of the parties, and the formal claim made by the plaintiff in his statement and declaration is not controlling.

Upon the subject of the amount recoverable by the plaintiff the court below charged the jury as follows:

"Now, you must first ascertain what his [John Smith's] interest was worth in 1888, on October 1st, when the corporation defendant took the business, or is supposed to have taken it, under the agreements. In order to find that, you will take what both parties agree upon as the amount of money value of his contributions to the firm,—some forty-odd thousand dollars. There is a dispute between the parties as to the actual amount of his contributions. On the one hand, he claims to have put into the firm, in addition to the $40,-895.40, which is conceded, a further item of $7, and a further item of $400 for a boiler. You have heard the testimony as to those two amounts, and it is for you to say, in the first place, how much the amount of his contribution should be. To that you should add the increase in the value of the interest in the partnership, as shown by the profits made by the partnership, or any increase in its assets, as shown by a comparison between the resources and liabilities, and add to the $40,000 his proportionate part of that increase in value of those profits. That will then bring you to the 1st of October, 1888; and to that you should add his proportion of the profits made by the Crosby Lumber Company between October, 1888, and January, 1889, the time of the forfeiture, if the testimony is sufficiently accurate to enable you to do so."

One of the assignments of error is to the above-quoted part of the charge, and it is strenuously contended that the court erred in authorizing and directing the jury to add to the plaintiff's contributions and share of the profits a further allowance for the increase in the value of the assets. The position thus taken is that, in ascertaining the value of the plaintiff's interest, he was entitled to a share of the profits in the restricted sense of gains realized from a business, and distributable as actual earnings among the members of a firm or the stockholders of a corporation, but he was to be excluded from participating in the increased value of the unsold assets of the concern. Is this a sound view of the plaintiff's rights upon the facts of the case? By the terms of the contract of March 29, 1888, the members of the firm, respectively, were to have stock in the new company "to the full amount of their interest in the firm, as such interest shall appear on the 1st day of October, 1888." But, so far as the plaintiff was concerned, that contract, in effect, was wholly repudiated by the corporation defendant. Not only did the plaintiff receive no stock, but his entire interest in the concern was appropriated by the defendant. In any just accounting, then, between

the parties, could the plaintiff be deprived of all benefit resulting from the increased value of the general assets? Surely not; for so to hold would be to give a premium to wrongdoing. We find nothing in the written contracts, nor in the authorities cited, to give countenance to a result so inequitable. The decisions relied on are not in point, for they simply define what the technical profits of a business are in the sense of net gains upon completed transactions. We are of the opinion that the plaintiff was justly entitled to recover the value of his interest in the company at the time it was wrongfully taken from him, and that a legitimate item in computing such value was the plaintiff's share of the increase in the value of the assets of the concern, in addition to his proper share of the earned profits in the technical sense of that term. It does not appear that it made any difference in result whether the value of the plaintiff's interest was ascertained as of October 1, 1888, when the contract should have been carried out, or as of January, 1889, when the forfeiture was enforced. But, the earlier date having been adopted for such valuation, we see nothing wrong in allowing the plaintiff a proper share of the profits between October 1st and the succeeding January, when his interest was absolutely lost to him by the action of the defendant. We cannot sustain the assignment of error to the charge of the court with respect to the allowance of interest from January, 1889. The plaintiff's claim was not for mere unliquidated damages. The defendant had in its hands his money,—or property, which was the equivalent,—and when the balance was struck, and the amount coming to the plaintiff was ascertained, interest thereon was justly demandable.

We think the court properly refused to affirm the defendant's sixth point. There certainly was evidence for the consideration of the jury that the plaintiff had acquired the interest of Louis L. Newerf in the firm of Smith, Newerf & Meyer. Not only did the plaintiff himself so testify, but the books of the firm and of the defendant contained entries tending to show the transfer to the plaintiff of Newerf's interest.

No error was committed in rejecting the offer of the assignment of January 14, 1889, from Newerf to the defendant of a half interest in the iron boiler. The plaintiff was a stranger to that paper, and his prior rights could not be affected by anything therein contained.

As both the fifteenth and twentieth assignments of error relate to the item of $200, the purchase money for land paid to Rose, they may be considered together. Whether the defendant was entitled to credit for that sum depended upon what the true state of facts was. If the defendant's version of the transaction was correct, then the credit was rightly claimed; but, if the plaintiff's version was correct, the defendant was not entitled to the credit. So the court distinctly charged. The allowance or disallowance of this credit was made to turn upon the jury's finding of the facts. They were instructed, in substance, that, if they believed the defendant's statement in regard to the matter, they should allow the credit, but, if they believed the plaintiff's statement, the credit should be disallowed. Therefore, if what was said by the court in respect to the statute of frauds was erroneous, it was altogether a harmless

error. It was an irrelevant reason for instructions proper in themselves. It is quite impossible that the jury could have been misled thereby.

The twenty-sixth assignment of error is, in substance, that the court erred in refusing to grant a new trial upon the ground that it appeared upon the record that the verdict is wholly unsupported by the evidence. It is hardly worth while to say that the overruling of a motion for a new trial of itself cannot be assigned for error. *Van Stone* v. *Manufacturing Co.*, 142 U. S. 128, 12 Sup. Ct. Rep. 181. It is, however, here urged that the evidence embodied in the bill of exceptions shows that the verdict is wholly unsupported by evidence. But we are unable to adopt that view. Undoubtedly there was evidence to sustain the verdict. Beyond that we cannot look. If the jury erred in the amount of their finding, it is not within our power to rectify their mistake. We have thus specially noticed all the assignments of error which were orally discussed by counsel. The other assignments we will not particularly mention. We must content ourselves with saying that we have carefully examined and considered them all, and fail to discover in any of them ground for disturbing the judgment below. After a patient consideration of the whole record, our conclusion is that the judgment of the court below must be affirmed.